and go to the last case for today but not this morning. We're happy to see you.I'm happy to be here.I think we can say good afternoon now.Pardon?I think we can say good afternoon now.Yeah, I think we can.My name is Renee Pietropalo.I represent Mr. Roberts.With the court's permission, I'd like to reserve three minutes for rebuttal.Sure. Given that the government hasn't denied that the trace summary, Exhibit 20, is testimonial such that Crawford and Melendez-Diaz apply, I intend to proceed directly to the primary issue before this court today, which is whether the government, as the beneficiary of the constitutional error, can prove or can meet its burden to prove beyond a reasonable doubt that the guilty verdict was surely unattributable to the error. There's negatives in there.There were negatives.I could say that is there a reasonable probability, can they prove that the error, that the erroneously admitted evidence didn't contribute to the error or to the guilty verdict?Excuse me. Now, where all the other evidence that was put on by the government to establish the interstate commerce element was credibly countered by defense counsel and so was not overwhelming, the government can't meet its burden of proving that the constitutional error was harmless beyond a reasonable doubt. The only piece of evidence that was not credibly countered by defense counsel was the trace summary, which on its face conclusively shows or purports to show that the gun traveled into Pennsylvania from Ohio and therefore...I'm sorry. What was, how was the fact that on the gun and the ammo it had states on it credibly countered? The expert, the government's own expert testified that you can't look at what's, the fact that Connecticut is stamped on the gun as evidence that it traveled in interstate commerce. That is only the corporate headquarters.The barrel of the gun was stamped Sturm, Ruger and Company, Southport, Connecticut, USA.Yes. And the gun was also stamped with a serial number. Now the defense position all along was, the theory was to attack the government expert's conclusion that the mark was authentic. And the way he did that was we have Agent Wilgos who testifies without having first physically examined the firearm, that the gun may have traveled in interstate commerce or could have been manufactured in Connecticut or New Hampshire. And he bases that conclusion, again, not on a physical examination of the gun, but instead on blue books and a gun trader's guide. And then the fact that the gun, but why would somebody, I mean, what theory can you come up with why somebody would have taken this gun and scratched it and put this stuff on it? Why? I mean, it has to make some sense. Well, we have, excuse me, we have the expert's testimony. He himself says that I can't assume from looking at the markings alone that this gun was made in Connecticut because that just means corporate headquarters. And then he goes on to say the fact, he explains that any person in Pennsylvania who has the right tools could counterfeit this gun in much the same way that you counterfeit this gun. Why would somebody want to do that? That's my question. I mean, the Supreme Court tells us to look at plausibility when we're dealing with evidence. Why would any, I mean, what benefit would it be for somebody to have scratched these things? Let's assume somebody could have. Why? I'm not sure that the why matters, but to answer your question. It has to make sense. Defense counsel posited that perhaps someone was trying to benefit from the name recognition, making generic, generic ammo, generic guns. The ammo is a little different to me, but all that stuff that was on the barrel of the gun. What defense counsel was trying to do was call into question the authenticity of the Sturm and Ruger gun. And then what he did, he created a question in the jury's mind that it was an authentic gun. And then what he did was, this is the theory of the defense. He asks, he says that we know by law Sturm and Ruger is required to keep a record of every gun it manufactures. And we know that the federal government is authorized by law to go to the manufacturer and get a copy of whatever record exists showing that this gun was manufactured there. And then what defense counsel does is ask the jury to infer, make an adverse inference from the absence of that readily available evidence that, again, it's like a missing witness instruction. He asked them to infer that in favor of the defense's theory. And so it's in this way that the evidence on the interstate commerce element for the gun is credible. And when I say credibly countered, I'm not suggesting that the evidence is insufficient to prove the interstate commerce element, which is what your Honor is, I think, getting at. To say that because the evidence is, the lawfully admitted evidence is otherwise sufficient to support the finding, the interstate element, interstate commerce element, would be to misapply the harmless error, the Chapman standard. Chapman doesn't ask is the properly admitted evidence otherwise sufficient. It says, can the government prove beyond a reasonable doubt that the guilty verdict was surely not attributable to the trace report? And here I submit that the answer to that question has to be no. When we have the United States attorney during closing asking the jury to consider Government Exhibit 20, and she specifically says in her closing, the case agent testified when he ran a trace, he recovered the firearm, he received info that it was manufactured in Connecticut, wholesaler was in Ohio, and it was eventually sold in Pennsylvania. This info is in Government Exhibit 20. So when the United States attorney invites the jury to rely on a piece of evidence that's admitted in violation of the confrontation clause, the government would be unable to meet its burden to prove that the jury did not rely on that evidence in reaching its guilty verdict. What's the substantive difference between the detailed report and the trace summary? Well, I would submit first that the detailed trace is not part of the record in this appeal. It was disclosed in discovery, but it wasn't admitted at trial. It's the subject of government's motion to supplement the record on appeal. But the question is an important one. We're about to get to the answer. But since you want the answer to the question, the detailed trace says nothing about Ohio into Pennsylvania. The theory of the defense is there's this missing evidence that we're calling into question the authenticity of the mark to prove the interstate commerce elements. The detailed trace shows that it's not manufactured in Pennsylvania. No, it says it's a Ruger, and it says it was sold in Pennsylvania. And then again, in Pennsylvania. That's all that it says. And for place of manufacture, it says only the United States. It does not say... No other information. But if the summary tracing report violates the confrontation clause, it's wholly irrelevant what was in the other document, right? That didn't go before the jury because the jury was exposed to the summary. Exactly. And the important part about the trace summary is that it's not cumulative. Again, that's the information that shows the crossing of the state lines. And the jury can rely on that information and that information alone to reach its guilty verdict. And is invited again to do so by the government. How did the evidence come in that Ruger manufactures in two places? I think it was New Hampshire and Connecticut. Yes. How did that come in? The witness who brought that in was Agent Wilkos. And again, he also in the next breath says that anyone in Pennsylvania having the right tools could duplicate the markings that we see here on this Ruger. But the jury would have had to sort of thought, well, why would anybody do that? And you say that's not relevant. Because it's relevant if the issue is the evidence insufficient. But if the test is their harm, it's not relevant to that inquiry. Because if the jury relied on it, if there's a reasonable probability that the trace summary, which violated the confrontation clause, contributed to the verdict, that's the burden that Mr. Roberts needs to meet to get a new trial. I'm content. I would ask, without belaboring the point, there's a second issue. It's the Rule 16 issue. It's very secondary, but it would go to the remedy. The discovery issue. It goes to the remedy that we would be requesting were this court to grant a remand for a new trial. I didn't know that we had that right. Well, I haven't raised a sufficiency claim. If I were raising a sufficiency claim, the answer is no, but I've raised a confrontational Sixth Amendment violation, which is subject to harmless error analysis, and the remedy would be remand for a new trial. And you can consider the Rule 16 discovery violation to remand with instructions that the government not be permitted to use the trace summary at a new trial. Even though they obviously made, I mean, somebody in that office made a mistake by not producing it. I mean, it wasn't that it didn't exist. They had it, and somebody goofed is really what the subject of the motion to permit them to do it late implies. So why would we now say, assuming, well, first you have a confrontational issue, but assuming we get over that, you're saying that the new trial, the judge would have the option of putting the trace, what is this thing called? The detail trace, sorry, into evidence now? You say they shouldn't be allowed to do that? I'm suggesting it would be within this court's authority to issue that as a sanction, just to prevent the government. You can't do the sanction. The district court's got to do the sanction. You could be right. I'm suggesting you have the authority, and I'm also suggesting that at a remand were one to be granted, that the trial attorneys would probably have the opportunity to make these arguments. Okay, we'll see. Let's hear from the government in response. I'm going to read you what I understand to be, this is a quote from our cases, what the question is that we're here to answer. The question is not whether in a trial that occurred without error, a guilty verdict would surely have been rendered, but rather whether the guilty verdict actually rendered in this trial was surely unattributable to the error. And I can demonstrate that. Okay, well, help me because I have... What's that from? It's also from a Supreme Court case or two. I mean, I think it's from Sullivan, to be honest. You put on an expert who said to the jury, I didn't trace this. The National Trading Center, that was their job. They traced this. If I had been on that jury, I would have never evaluated any of those arguments about Wilgo's testimony. He said, I'm not the authority. The National Trading Center is who traces these things. And in a closing argument, they told the jury, Exhibit 20 is all you need. I would have never, if I'd been on that jury, I would have looked at Exhibit 20 and I would not have spent any more time in that jury room. First of all, a closing argument, that's not... The government counsel said that in one stretch, but for the most part, what she said was, if you believe that we've shown beyond a reasonable doubt that this gun was a real Ruger, end of story. Because all real Rugers are made in New Hampshire or Connecticut and necessarily had to cross state lines to get to Pennsylvania. That's what Mark Wilgo said by looking at the Ruger. And he was our expert. But let me answer your question, Your Honor. I can show that this verdict was surely unattributable to this document for one simple reason. If you look at page 230 of the appendix, that's the trace summary. The trace summary has on that page exactly two indicia of interstate travel. It has near the top of the page, the fact that the gun was a Ruger and therefore made in New Hampshire or Connecticut. And it has a little lower down that the fact that the gun went from Ohio to Pennsylvania. Now let's take the top, assume counsel said, she got up here and said, that the jury could have convicted the defendant based on the trace summary alone. Let's test that. Wait a minute, let's slow down a little bit. Okay, let's test that. Could the jury have convicted Mr. Roberts based solely, suppose it disbelieves all of the testimony of Mark Wilgos. It disbelieves from its own eyes looking at the gun that this is really a Ruger. Disbelieves Truconowitz. Could have convicted based on the trace summary statement alone that this was a Ruger. The answer is no, and the reason because at page 114 and 115 of the appellate record, Truconowitz said that portion of the trace summary that says the manufacturer information came from me. And where I got it was by looking at the Ruger. So if you're the jury and you don't believe this is a real Ruger, then that portion of the trace summary is totally worthless to you. Okay, now let's look a little farther down. The trace summary also says the gun went from Ohio to Pennsylvania, right? Why couldn't the jury convict on that alone? Because both of our witnesses testified on cross-examination pages 117, 140, and 143 that that trace evidence is obtained from the National Tracing Center who gets it from the manufacturer. So if you don't believe Ruger manufactured this gun, then the individual steps that this gun supposedly took are as worthless as the paper it's written on. The trace summary would be in that instance as spurious as you thought the gun was. And that in a nutshell is why there's no way the jury could have believed the trace. If you're going to help me, you're going to have to slow down. I'm sorry, Your Honor. I just feel the moment's ticking away. But that, I think, is my way of explaining that the jury could not only not rely on the trace summary alone, that to the extent, let's suppose the jury, for the jury to give the trace summary statement that this is a Ruger any credence, it already had to have believed our testimony from our witnesses that it was a Ruger. And the instant it does that, the trace summary's notation that this is a Ruger becomes cumulative and therefore harmless under Jimenez. Well, what do you say to my, I realize I might not be the typical juror, but I wouldn't have any trouble believing it was a Ruger because your expert said it was a Ruger and he was familiar with guns. Absolutely. He conceded that the Connecticut reference didn't show that the gun came from Connecticut because that was the home office of the outfit. And of course, it would be hearsay evidence, if the gun were offered for the purpose of showing that it was made in Connecticut, it would be hearsay evidence. But you don't get to all of this evidence about your, if you're a juror and you have a concession that you believe it's a Ruger and you got Exhibit 20 that says the National Trading Center traced it and it came from either Connecticut, it came from Connecticut, I guess. Was it Connecticut or New Hampshire? New Hampshire. Why would you go any further? I mean, why would you worry about what Wilgos said was correct or not? You had to believe what Wilgos said before you could give the trace summary any weight. You have to believe it was a Ruger. I mean, the Horstman case I cited in my brief. You say once Wilgos said this is a Ruger. Absolutely. And the jury is sitting there and saying, okay, I believe it's a Ruger. Now, somehow you said you got a conclusion there that what the tracing center said is cumulative. Absolutely. When your own witness concedes that it is the authoritative source of where this came from, why would the jury even consider evidence that your own expert had conceded was secondary? It's cumulative, right? But why get to it since he's conceded that the people whose job it is to trace has traced this gun and it came from New Hampshire? He hasn't conceded that that's secondary. If you look at Wilgos' testimony, he spends a lot of time saying, I have 21 years of experience. I've looked at thousands of guns. I look at this gun, and from everything about it, it's a Ruger. I think he mentions the trace information briefly in cross. I'm granting you that they believe him when he says it's a Ruger. And once you grant that, the trace summary is cumulative. Because the trace summary on that point just showed you. But why would you not consider authoritative cumulative evidence first before reaching cumulative evidence that there's argument about? Because when you say authoritative, the authority for the trace summary is the manufacturer. So you always wind up back at the same place. If you don't believe this is a Ruger, you can't believe the trace summary. And the trace summary alone won't tell you that. If you disbelieve everything else we said, the trace summary isn't enough. That's the problem. And so let's look at this from the other. I mean, that's the Sullivan standard. It would not be rational for a juror to say, I believe that witness that he knows what a Ruger looks like. And I believe it's a Ruger. And I've got Exhibit 20 here. It tells me that that Ruger came from ____. And all I'm saying is that if the jury believed both those things at once, this would be cumulative. Again, I mean, the Jimenez case says that's one of the factors. Did this have merely a cumulative effect on the verdict? But we have agreed, I thought, at the outside that the sufficiency of the evidence, the fact that there's sufficient evidence for a conviction here is not our issue. Agreed. Whether we can be assured that Exhibit 20 played no role in the decision of this jury. No non-cumulative or non-superfluous role. I would agree with that. There's no, we can't prove to a certainty that this played no role. In fact, one of your own opinions, Judge Stapleton, Lewis v. Pinchak, from like 03, notes that the harmlessness inquiry is inherently quantitative. So we examine how much evidence we had. So let's look at, you know, Mark Weldose testifies. He looked at the gun at trial, page 125. Then he testifies at pages 127 and 128. This is a Smith and Ruger handgun. And from 152 to 56, he says, Smith and Ruger handguns are all made in New Hampshire, Connecticut. Now, Mr. Roberts comes forward and says, well, you know, Lewis, I mean, Weldose said only that he thought this was most likely made in New Hampshire, Connecticut. No, in the very next breath, he says, I'm 99.9% sure. Actually, where did Weldose, did Weldose explain why he said that they have to be meant, it has to have been, if it's Ruger, it has to have been manufactured in New Hampshire or Connecticut. From his precipient knowledge of where Ruger makes its handguns, he knows that they make those in one of those two places. And I believe he said he visited the plant. Although I could be confusing that for Remington. But he knows that through his expertise, 21 years in the industry, et cetera. So, I mean, the case I offered in my brief was the Horseman case. Mr. Roberts attempts to distinguish it in his reply in a footnote. To be in all candor, I don't understand the distinction he's making. Because Horseman involved the same situation. You have an expert saying a gun is made out of state. You have the gun put in front of the jury itself with clear markings of out-of-state commercial manufacturer. And then you have one of the witnesses saying, well, yes, it's conceivably possible someone could counterfeit a gun in state. But the Eighth Circuit there said, confrontation clause violation harmless. Because the markings on the gun plus the expert testimony, notwithstanding his concession about possibilities, provided overwhelming evidence. That's right out of Horseman. And that's what we offered here, both the gun and the expert. So I would submit to the court that, you know, that evidence was, I'm not merely arguing sufficient. Through my brief, I don't know how many times I used the word overwhelming, but it was a lot. Another case I would cite, but this even illuminates the point a little bit more, United States v. George Bennett. It's a First Circuit case from 1996. Did you cite that in your brief? I don't. I just found it, you know, researching for this. Okay, there are 28 J letters you can use. Yeah, I'm sorry. I'm happy to, you know, we can. United States v. George Bennett. Absolutely. Does it have a citation? I can get it. It's First Circuit, 1996, Judge Boudin. And what happened in that case was a defendant in Maine was he had used a handgun in the commission of a crime. He was a felon. He's prosecuted under 922. By the time the trial rolls around, the gun has been thrown away. So the only testimony is somebody says, yeah, this was a Ruger, by coincidence. It was a Ruger in that case. And the First Circuit, granted on a sufficiency review, said the fact that the witness testified that this was a Ruger created an overwhelming probability. That's the phrase it uses. Overwhelming probability that it was made outside of Maine. Now, here we have more than that. We have the gun itself. We have the expert's testimony that he's 99.9% certain that this was manufactured in either New Hampshire or Connecticut. It's true he couldn't say which state, but we know neither of those states lies within the boundaries of Pennsylvania. So that's all kind of immaterial. So that, I think, is where we wind up on that issue. I want to clarify, though. I do agree with Mr. Roberts about a couple things. She's not Mr. Roberts. No, no. Mr. Roberts is attorney. I agree with him on a couple things. I agree that the district court did err in admitting this. It admitted this as non-hearsay. First of all, do you agree that it was a mistake of the U.S. Attorney's Office not to put it into evidence? Absolutely. It was absolutely a mistake not to put it into evidence or not to at least deliver it before trial. And by way of explanation and not justification, I'm told that the agent had it and only popped it out on the morning of trial, and she was unaware of it. Now, she should have known it, but she was unaware of it. But in this case, the AUSA should have delivered it sooner. It wouldn't have made an impact on Mr. Roberts' trial strategy for the reasons that I've said in my motion to supplement. The detailed trace that we did turn over showed this was a Ruger. As soon as you see that near Mr. Roberts' counsel, it's game over for you unless you get an expert or somebody in there to say why you think this is not a real Ruger. The fact that the gun went from Ohio to Pennsylvania, yeah, that does only appear in the trace summary, but it's superfluous for the reasons I said in the Singleton case in Scarborough. We know we only have to prove this gun crossed state lines one time, not multiple times. And necessarily, if this gun was a Ruger made in New Hampshire, Connecticut, it had to cross state lines to get here. I don't think it's relevant at all, the other tracing report. I can't find on the tracing report that was not put into evidence a statement that it crossed state lines or anything else. It states that it's a Ruger. What I'm saying about that is the fact that it's a Ruger, Rugers are not made in Pennsylvania and never have been. I don't think there's any dispute about that. That's why there's so much noise in the briefs about was this or wasn't a real Ruger. The fact of the matter is the jury was instructed at page 196 with the typical reasonable doubt instruction, and it said the government has to prove beyond a reasonable doubt, not beyond all possible doubt, not to a mathematical certainty. And I would submit to the court that we came pretty darn close. 99.9% is as close as we get on this side of the veil, I think, to mathematical certainty. And, you know, it's true. We had a witness concede in all candor that it's theoretically possible to counterfeit handguns within the state. But why would someone do that? I'm still trying to figure that out. Your Honor, I think Counselor can probably state it better than I can, but I think in fairness to her, their theory was that there were perhaps like maybe cut rate gun manufacturers out there who would stamp their gun with the mark of a better manufacturer. Like Tiffany's. Yeah, kind of. Like it was a counterfeit something or other. Yeah, but it says a lot. I mean, that our agent, 21 years in the industry, says never seen a counterfeit handgun. I mean, I think that speaks volumes about how prevalent this phenomenon is, at least in this industry. Thank you. Thank you. Okay. Rebuttal. The agent had also never seen a Ruger, by the way. He said he'd never seen a counterfeit, but he never looked for a counterfeit. He just assumed from the markings. And when he said 99 percent, he said he was basing it on the markings as orally conveyed to him, not on a physical examination of the gun, and he was basing it on the blue book and the gun trader's guide. He said if he had known this was going to be an issue, he wouldn't have relied solely on the blue book or the gun trader's guide. But to respond to the initial argument by Mr. Kokas, you don't necessarily have to believe that it's a Ruger before you can ever get to the trace summary. Defense counsel made a credible, he presented a credible challenge to the authenticity of the Ruger. That's all that he had to do for purposes of the harmless error analysis. The credible challenge was only to his cross-examination. There was nothing else. It was the counterfeit issue and the ability and ease of manufacturing. The 0.1 percent chance. No, no, no. Immediately after he said 99.9 percent chance, he then said, but of course, anybody in Pennsylvania. I mean, that was the very next. Yeah, but there's no evidence in the record of any counterfeiting. That's why I don't. Yeah, that's why I keep pressing on. You say credible evidence of counterfeiting. Credible evidence of counterfeiting would be a witness who says, yes, I've seen a counterfeit gun. Perhaps I misspoke. Defense counsel credibly countered evidence that the government put on that the gun traveled in interstate commerce because he attacked the basis for the experts' opinions. And then the only evidence, the jury could have believed that. The jury could have said, oh, hey, who knows? Maybe it's true. Maybe this gun was made in Pennsylvania. But then they get to the trace summary. And it unequivocally says Ohio to Pennsylvania. They don't have to prove it crossed twice. They have to prove it crossed once. The jury might have thought that one time was the Ohio into Pennsylvania. And the important part to remember is this is a general verdict. There's no special interrogatories. The jury was told you can base it on the gun or on the ammunition. We have no way of knowing what they believed. We have no way of knowing what they based their guilty verdict on. We do know that the AUSA, the trial USA, argued, specifically argued to the jury. It doesn't matter whether it was once or it was ten times. She specifically argued to the jury. You can base your verdict on Exhibit 20 and find that the gun traveled in interstate commerce. And then she also directly challenged defense counsel, all of his arguments, all of his cross-examination of Agent Turkanowicz. She directly challenged him on those arguments. And the underlying purpose of that was to tell the jury, maybe we didn't bring in the right witness for this, but it doesn't matter. What else would it have shown? We didn't need to. So she underscores the idea that there was no need to confront this witness. And I submit that there was. Isn't that because her argument is look at the gun? But the gun can't answer the question when the expert specifically says the gun doesn't answer the question. The fact that it's Mark Ruger doesn't mean that it was manufactured in either Connecticut or in New Hampshire. The only evidence is that those guns are manufactured in Connecticut or New Hampshire. There's no evidence that they're ever manufactured someplace else. But the evidence came out that anyone in Pennsylvania having the right tools could counterfeit these markings, just like they counterfeit U.S. currency. And he didn't say it was a theoretic possibility. He compared it to counterfeiting currency, which is, as we know, quite common. He also says he's never seen or heard of a counterfeit Ruger. But he said that, and if you read the closing by defense counsel, he answers that pretty well, I think, when he says that, if all you do is get an oral representation from the case agent, this gun's Mark Ruger and here's the number, and then you turn around and you take your book off your shelf and you say this was manufactured in Connecticut, how will you ever find a counterfeit gun? You never will because you're not looking. And it's also significant that he says he's never seen this model of Ruger, period. Okay. Thank you. Thank you very much.